

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MIDWEST RAILCAR REPAIR, INC. | CIV. 08-4162 |
| Plaintiff, | |
| -vs- | |
| SOUTH DAKOTA DEPARTMENT, OF REVENUE & REGULATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Midwest Railcar Repair Inc., seeks a judgment from this Court declaring that the South Dakota Department of Revenue & Regulation's imposition of sales and use taxes upon it is invalid as a discriminatory tax in violation of the federal Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11501(b)(4). Pending before the Court are cross motions for summary judgment which have been fully briefed by both parties. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted and Plaintiff's motion for summary judgment is denied.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement

1

to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988).

## DISCUSSION

In South Dakota, the Legislature has imposed both a sales and use tax on the service of repairing and refurbishing railcars. *See* SDCL ch.10-45 and 10-46. No use tax is imposed in South Dakota for the same work performed upon aircraft. SDCL 10-29-18. SDCL 10-29-18 provides:

> The tax imposed by this chapter on aircraft is in lieu of the tax imposed by chapter 10-46 on tangible personal property that is used or consumed or stored for use and consumption in the service, repair, or maintenance of such aircraft.

Because there is no similar exemption under South Dakota law for use taxes imposed upon the service of repairing and refurbishing railcars, Midwest Railcar Repair Inc. ("Midwest Railcar"), seeks a declaration that the South Dakota Department of Revenue & Regulation's ("the Department") imposition of sales and use taxes upon Midwest Railcar is invalid as a discriminatory tax in violation of the federal Railroad Revitalization and Regulatory Reform Act ("4-R Act"), 49 U.S.C. § 11501(b)(4).

"The 4-R Act was enacted 'in part to restore the financial stability of the railway system of the United States.'" *Union Pac. R.R. Co. v. Minn. Dept. of Revenue*, 507 F.3d 693, 695 (8th Cir. 2007) (quoting *Dept. of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 336 (1994)). "One of the ways Congress chose to achieve this objective is found in Section 306 of the 4-R Act, now codified at 49 U.S.C. § 11501, which prohibits 'States (and their subdivisions) from enacting certain taxation schemes that discriminate against railroads.'" *Id.* (quoting *ACF Indus., Inc.*, 510 U.S. at 336). The

rationale for this provision is the concern that railroads "are easy prey for State and local tax assessors in that they are non-voting, often non-resident, targets for local taxation, who cannot easily remove themselves from the locality." *Dep't of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 336 (1994) (citation omitted).

In its current form[1], the provisions of Section 306 relevant to this case are as follows:

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a state may not do any of them:

    (1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

    (2) Levy of collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

    (3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

    (4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

---

[1]The original language of the relevant portion of the 4-R Act, Section 306, was originally codified as 49 U.S.C. § 26c, Pub. L. No. 94-210, 90 Stat. 54 (1976). *CSX Transp., Inc. v. Ga. State Bd. of Equalization*, 552 U.S. 9, n. 1, (2007). The language of the original Section 306 was slightly revised when the provision was recodified in 1978, Pub. L. No. 95-473, 92 Stat. 1337 (codified at 49 U.S.C. § 11503 (1978)) and then again in 1995, Pub. L. No. 104-88, 109 Stat. 803 (codified at 49 U.S.C. § 11501 (1995)). The revisions were not intended to make a substantive change in the law. *Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 457-58 n.1 (1987) (1978 revision "may not be construed as making a substantive change in the laws replaced"); H.R. Conf. Rep. No. 104-422, at 193 (1995) ("This provision (11501) replaces without substantive change former section 11503.").

49 U.S.C. § 11501(b). The first three subsections of the statute deal exclusively with property taxes and Congress provided a comparison class comprised of "other commercial and industrial property. Congress, however, did not provide such a comparison class for subsection four. 49 U.S.C. § 11501(b)(4). Rather, the Eighth Circuit has defined the proper comparison class for determining whether a tax violates subsection four as being the 'competitive mode' comparison class which is comprised of the railroads' direct competitors. *United Pac. R. Co. v. Minn. Dept. of Revenue*, 507 F.3d 693, 695 (8th Cir. 2007).

Both parties have moved for summary judgment. In support of its motion for summary judgment, the Department argues that per its terms, Section 306 of the 4-R Act does not serve to protect from discrimination privately owned companies such as Midwest Railcar that service railroad carriers. The Department also argues that United States Supreme Court's decision in *Dept. of Revenue v. ACF Indus.*, 510 U.S. 332 (1994) bars Midwest Railcar from raising this exemption discrimination claim under subsection (b)(4) of the statute. In the alternative, the Department argues that it is entitled to summary judgment because Midwest Railcar has failed to produce evidence sufficient to create a question of material fact as to whether railroads and airlines are direct competitors for purposes of the 4-R Act.

Midwest Railcar argues that it, rather than the Department, is entitled to summary judgment because the Eighth Circuit has determined that railroads and air carriers are direct competitors as a matter of law. Midwest Railcar argues further that should the Court not find it is entitled to summary judgment, the case should proceed to trial because a question of material fact exists as to whether the railroads and air carriers are direct competitors for purposes of the 4-R Act.

### I. Does the 4-R Act serve to protect from discriminatory treatment private companies such as Midwest Railcar that service railcar carriers?

The Department argues that protections of the 4-R Act do not extend to Midwest Railcar because it is not a "rail carrier" under subsection (b)(4) of the statute. In *Trailer Train Co. v. State Tax Com'n*, 929 F.2d 1300 (8th Cir. 1991), *Trailer Train Co. v. Bair*, 765 F.2d 744 (8th Cir. 1985),

4

and *Trailer Train Co. v. State Bd. of Equalization*, 710 F.2d 468 (8th Cir. 1983), the Eighth Circuit had an opportunity to examine an argument similar to that made by the Department. In the *Trailer Train* line of cases, a private corporation engaged in the business of providing standardized railroad flat cars to railroad companies challenged an ad valorum tax on the corporation's rail cars as being discriminatory in violation of the 4-R Act. Although the corporate plaintiff was not a "common carrier by railroad"[2] under the language of the Act, the Court concluded that the statutory prohibitions against discriminatory treatment applied to the plaintiffs because the court found that the close relationship between the plaintiffs and common carriers by railroad resulted in discriminatory treatment against common carriers by railroad. *Trailer Train Co. v. State Bd. of Equalization*, 710 F.2d at 471. The court in *Trailer Train* noted the following evidence in support of its conclusion: (1) the corporate plaintiffs were owned by most of the major railroad systems in the United States; (2) virtually all of the major trunk and shortline railroad carriers in the United States contract with the plaintiffs for car service; and (3) the common carriers by railroad that participate in the pooling arrangement are relieved of the financial burden of purchasing, leasing, managing, controlling and accounting for substantial numbers of their own cars. *Id.* at 471. As a result of these factors, the Court concluded that the "tax discrimination against the plaintiffs affected common carriers by railroad as directly and immediately as tax discrimination against the railroad cars of the carriers themselves." *Id.*

The court in *Trailer Train* also stated that its conclusion was consistent with the legislative purpose underlying the 4-R Act. *Id.* at 472. The court stated that "because of the close relationship between the [plaintiffs] and the common carriers by railroad, [section 306] must be construed to apply to the [plaintiffs] so as to not defeat Congress's intention 'to prevent tax discrimination against railroads in any form whatsoever.'" *Id.* at 472 (quoting *Ogilvie v. State Bd. of Equalization*, 657 F.2d

---

[2]When section 306 was recodified as 49 U.S.C. § 11503 in 1978, the language "common carriers by railroad" was changed to "rail carrier." The revisions were not intended to make a substantive change in the law. *Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 457-58 n.1 (1987) (1978 revision "may not be construed as making a substantive change in the laws replaced").

204, 210 (8th Cir. 1981)). The court in *Trailer Train* also noted that "[b]ecause section 306 generally proscribes various types of tax discrimination against rail 'transportation property,' the fact that the [plaintiffs'] personal property, like the personal property of the common carriers themselves, is 'transportation property' within the meaning of section 306 also indicates that Congress intended subdivision [(b)(4)] to apply to private rail car companies." *Id.* at 472, n.6. The court quoted with approval the Fifth Circuit's decision in *Gen. Am. Transp. Corp. v. La. Tax Comm'n*, 680 F.2d 400 (5th Cir. 1982) which recognized that private rail car companies should be treated the same as operating companies because "[t]he rolling stock of private car companies is clearly an integral and necessary part of the 'entire operating unit devoted to trail transportation services.'" *Id.* at 403 (quoting 49 C.F.R. § 1201(2i)(33), the Interstate Commerce Commission's definition of rail transportation property). Because "'[t]he legislative purpose of the Act is to prevent a state from unfairly burdening interstate carriers regulated by the [Interstate Commerce Commission],'" the court in *Trailer Train* stated that "'it makes little sense to deny private car companies the same protection against discriminatory taxation already provided to other railroad transportation property.'" *Id.* (quoting *Gen. Am. Transp. Corp. v. La. Tax Comm'n*, 680 F.2d at 403).

Unlike the plaintiffs in the *Trailer Train* cases, Midwest Railcar's relationship with rail carriers is not nearly as close such that the Court can say that any discriminatory treatment of Midwest Railcar has the effect of discriminating against railroad carriers in violation of the 4-R Act. Midwest Railcar is purely a private company, unowned by any rail carrier and there is no evidence that as in the *Trailer Train* line of cases, the majority of rail carriers contract with Midwest Railcar. Additionally, unlike the plaintiffs in *Trailer Train*, Midwest Railcar is not providing transportation property, but is servicing such property by providing repairs and maintenance. The facts presented in the *Trailer Train* cases do not support extending the protections of the 4-R Act to Midwest Railcar.

For the foregoing reasons, its it hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. 28) is GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 24) is DENIED.

Dated this 23rd day of June, 2010.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)        DEPUTY